■ In the Matter of the Estate of JOHN R. FALATYN, Deceased. PATRICIA M. FALATYN, as Executor of JOHN R. FALATYN, Deceased, Appellant; FRANK S. FALATYN, Respondent. [779 NYS2d 638]—

Lahtinen, J. Appeal from an order of the Surrogate's Court of

Ulster County (Czajka, S.), entered May 23, 2003, which granted respondent's motion for summary judgment on his cross petition to enforce a stock purchase agreement.

This appeal calls upon us to determine whether there are factual issues regarding the construction of the relevant portions of a stock purchase agreement between respondent and his deceased brother, who was petitioner's spouse. Respondent and decedent purchased a business in the late 1980s and, in May 1991, they entered into an agreement wherein one would buy the other's shares of stock in the event of death or disability. The agreement provided in pertinent part: "The purchase price for the shares of stock of a deceased shareholder shall be the value last determined prior to the death or disability of such shareholder and indorsed on Schedule 'A.' The failure or neglect to determine the value over a prolonged period shall not be reason to increase or decrease the value last determined and set forth in Schedule 'A.' " The agreement further provided that each shareholder would obtain life insurance naming the other shareholder as beneficiary in order to provide funds for the stock purchase and that if such insurance proceeds exceeded the purchase price, "the excess shall be retained by the surviving . . . shareholder."

At the time they executed the agreement, respondent and decedent set forth the total value of the corporation as $700,000 per shareholder. They purchased individual life insurance policies that paid $1.5 million. No new value of the corporation was placed on Schedule A during the ensuing years. In 2001, the amounts of the life insurance policies were increased to $3 million. Decedent died suddenly of a heart attack on December 28, 2001. Although respondent discussed with petitioner compensating decedent's estate in excess of $700,000 for the stock, no agreement was reached.

In October 2002, petitioner commenced this proceeding in Surrogate's Court seeking specific performance of the stock purchase agreement for "$2,557,000 or more, but in no event . . . less than . . . $2,200,000." Respondent cross-petitioned for specific performance requesting that petitioner be directed to transfer decedent's shares for $700,000. Respondent eventually moved for summary judgment on his cross petition and the motion was granted. Petitioner appeals.

The Court of Appeals has recently reiterated the well-settled law regarding the construction of contracts, stating that "we have repeatedly applied the 'familiar and eminently sensible proposition of law [ ] that, when parties set down their agreement in a clear, complete document, their writing should . . . be

enforced according to its terms' " (*Vermont Teddy Bear Co. v 538 Madison Realty Co.,* 1 NY3d 470, 475 [2004], quoting *W.W.W. Assoc. v Giancontieri,* 77 NY2d 157, 162 [1990]; *see Moon v Clear Channel Communications,* 307 AD2d 628, 630-631 [2003]). "[I]f the agreement on its face is reasonably susceptible of only one meaning, a court is not free to alter the contract to reflect its personal notions of fairness and equity" (*Greenfield v Philles Records,* 98 NY2d 562, 569-570 [2002]). Here, respondent and decedent set forth in clear terms their intentions regarding the stock and its value in the event one of them died. The agreement established the value in Schedule A and provided a mechanism for adjusting that value. They opted not to adjust that initial value and, indeed, the agreement specifically contemplated that they might not make adjustments to value. In such circumstances, the agreement provides that not making a change in "the value over a prolonged period shall not be reason to increase or decrease the value." While they did increase the amount of life insurance, this did not alter the stock value. In fact, they chose not to change the stock value on Schedule A when changing the amount of insurance. Moreover, the agreement explicitly contemplated that the amount of insurance might exceed the value placed on the stock in Schedule A. Respondent and decedent freely set forth their intentions in a clear document and, accordingly, the agreement must be enforced without regard to extrinsic evidence or the fact that the agreement now appears inequitable (*see R/S Assoc. v New York Job Dev. Auth.,* 98 NY2d 29, 33 [2002]; *Greenfield v Philles Records, supra* at 569-570).

Petitioner's attempt to find triable issues in matters outside the parameters of the agreement—including statements made during unsuccessful efforts by petitioner and respondent to amicably resolve their differences—is not persuasive. "Ambiguity is determined by looking within the four corners of the document, not to outside sources" (*Kass v Kass,* 91 NY2d 554, 566 [1998] [citation omitted]). The words employed by respondent and decedent—both of whom were astute in business affairs—are not ambiguous when read in the context of the entire document (*see id.*).

The remaining arguments have been considered and found unpersuasive.

Cardona, P.J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the order is affirmed, with costs.