■ In the Matter of the Dissolution of DELMAR PEDIATRICS ASTHMA & ALLERGY CARE, P.C. JONATHAN B. PASTERNACK, Respondent-Appellant; MICHAEL P. LOONEY, Appellant-Respondent. [828 NYS2d 589]—

Lahtinen, J. Cross appeals from a judgment of the Supreme Court (McNamara, J.), entered April 10, 2006 in Albany County, which, inter alia, granted petitioner's application, in a proceeding pursuant to Business Corporation Law article 2, to direct the judicial dissolution of Delmar Pediatrics Asthma & Allergy Care, P.C.

In 2004, petitioner commenced this proceeding for dissolution of Delmar Pediatrics Asthma & Allergy Care, P.C. (hereinafter the corporation), which he had formed with another doctor in the 1970s. Petitioner and respondent, a shareholder and president of the corporation, stipulated that the corporation would redeem the shares of the third doctor in the practice (leaving petitioner and respondent as 50% shareholders), and that the corporation would be dissolved by consent. Unable to agree on various aspects of the dissolution, petitioner and respondent returned to court and a hearing was held before a referee as to certain specific issues delineated by the parties. The referee determined, among other things, that petitioner was entitled to receive $84,000 in "deferred compensation" and a total cash surrender value of $61,486.37 on three life insurance policies. When petitioner learned that respondent had begun a medical practice under the name "Delmar Pediatrics," he moved to have the referee's decision modified to prevent respondent from using such name. The referee denied petitioner's request. Thereafter, Supreme Court issued a judgment that accepted the referee's determinations and dissolved the corporation. These appeals by the parties ensued.

Respondent argues that petitioner's employment agreement with the corporation did not authorize the payment of $84,000 in deferred compensation unless petitioner retired from the corporation and, thereafter, did not compete with it. Firmly established principles of contract law provided that "[a]n agreement that is clear and complete will be enforced according to the terms as written by the parties" and extrinsic evidence is proper "only if the agreement is ambiguous or subject to more than one interpretation" (*Hudock v Village of Endicott*, 28 AD3d 923, 924 [2006]; *see Greenfield v Philles Records*, 98 NY2d 562, 569-570 [2002]; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]; *CV Holdings, LLC v Artisan Advisors, LLC*, 9 AD3d 654, 656 [2004]; *Scudder v Jack Hall Plumbing & Heating*, 302 AD2d 848, 850 [2003]). The pertinent agreement, signed in November 2002 by respondent (both individually and as president of the corporation) and petitioner, provides that, as of October 2002, petitioner's deferred compensation was $84,000. A payment plan of $4,000 per month is recited, as well as the fact that such payments commenced upon petitioner's "termination of employment." The deferred compensation is explicitly payable even if the agreement is otherwise terminated and, should petitioner die, is payable to his estate. The language used by the parties in the agreement reveals that the "deferred compensation" represented previously earned compensation to be paid once petitioner was no longer working for the corporation, a condition that has been satisfied. While respondent offered a plausible explanation of an alternate reason for the deferred compensation provision and indicated certain equities favoring his position, such extrinsic evidence cannot be used to create an ambiguity in a clear agreement (*see Matter of Falatyn*, 9 AD3d 538, 540 [2004]). Our decision in *Matter of Bronsky-Graff Orthodontics, P.C.* (9 AD3d 638 [2004]) does not, as urged by respondent, compel a contrary conclusion since the current case involves compensation already earned, whereas the petitioner in *Bronsky-Graff* sought to force other shareholders to buy his stock while he actively worked to destroy the corporation.

Unlike the written provision regarding deferred compensation, there is not a clear written agreement as to whether the corporation or petitioner should receive the cash surrender value of three life insurance policies on the life of petitioner. A stock purchase agreement provided that, upon the "Pre-Death Closing Date," all such policies would be assigned to and distributed to Pasternack. As observed by the referee, this provision did not control because there never was a pre-death closing since, rather than a stock purchase, the corporation was dis-

solved. Two of the policies, totaling about $30,000, had been received by petitioner in 2002 and deemed a bonus in office records. The proceeds from the third policy, received after this contentious dispute had developed between petitioner and respondent, was held by respondent's attorney. The referee awarded the proceeds of the policy to petitioner based, in part, on the parties' prior conduct regarding the policies, including: the cost of the policies had been consistently expensed against petitioner's interest in the corporation; his family had always been the beneficiaries of the policy; and respondent had not objected when petitioner received the surrender value of the first two policies in 2002. The referee's resolution of this issue is amply supported by the record.

The record further supports the referee's determination that the parties' various stipulations and the course they charted for resolution of their dispute foreclosed petitioner's efforts to successfully interject in a motion to modify the issue regarding respondent's use of the name "Delmar Pediatrics" for his new medical practice. The remaining arguments have been considered and found unpersuasive.

Cardona, P.J., Mugglin and Rose, JJ., concur. Ordered that the judgment is affirmed, without costs.