[3 NE3d 1151, 980 NYS2d 903]

HERBERT KOLBE et al., Appellants, v CHRISTINE J. TIBBETTS, as Superintendent of Schools of the Newfane Central School District, et al., Respondents.

Argued November 14, 2013; decided December 12, 2013

## POINTS OF COUNSEL

*Paul S. Bamberger, Civil Service Employees Association, Inc.,* Albany, and *Reden & O'Donnell, LLP,* Buffalo (*Terry M. Sugrue* and *Joseph E. O'Donnell* of counsel), for appellants. I. The word placement, sentence structure, punctuation and context of collective bargaining agreement section 6.5.3's "coverage provided" clause unambiguously demonstrate that "the coverage which is in effect for the unit" is qualified by "at such time as the employee retires," thereby establishing that the coverage provided to retirees shall be the same coverage as was in effect when the employees retired. (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.,* 13 NY3d 398; *Reiss v Financial Performance Corp.,* 97 NY2d 195; *Atwater & Co. v Panama R.R. Co.,* 246 NY 519; *Corhill Corp. v S.D. Plants, Inc.,* 9 NY2d 595; *Della Rocco v City of Schenectady,* 252 AD2d 82; *Matter of Jacob,* 86 NY2d 651.) II. The "coverage provided" clause of collective bargaining agreement section 6.5.3 continues to operate during retirement for the same period of time that the rest of section 6.5.3 operates: until the employee reaches age 70. (*Eighth Ave. Coach Corp. v City of New York,* 286 NY 84; *Greenfield v Philles Records,* 98 NY2d 562.) III. Health insurance "coverage" provided to the unit expressly includes specific co-pay amounts. IV. The defendants' alternative interpretations of collective bargaining agreement section 6.5.3 are without merit. (*Greenfield v Philles Records,* 98 NY2d 562.) V. Pursuant to settled principles of law involving the interpretation of collective bargaining agreements, it is clear that plaintiffs' health insurance coverage from the collective bargaining agreements in effect when they retired may not be diminished without their consent. (*Hudock v Village of Endicott,* 28 AD3d 923; *Della Rocco v City of Schenectady,* 252 AD2d 82; *Myers v City of Schenectady,* 244 AD2d 845; *DiBattista v County of Westchester,* 35 Misc 3d 1205[A], 2008 NY Slip Op 52731[U]; *International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. [UAW] v Yard-Man, Inc.,* 716 F2d 1476; *Chemical Workers v Pittsburgh Plate Glass Co.,* 404 US 157.) VI. Defendants' remaining defenses should be dismissed and the judgment and order of the trial court should be reinstated for the reasons stated by the trial court. (*Matter of Duchnowski,* 31 NY2d 991.)

*Hodgson Russ LLP,* Buffalo (*Karl W. Kristoff* and *Jeffrey T. Fiut* of counsel), for respondents. I. The Appellate Division cor-

rectly held that the collective bargaining agreements permit defendants to modify the plaintiffs' prescription co-pays. (*Vermont Teddy Bear Co. v 538 Madison Realty Co.*, 1 NY3d 470; *Matter of Westmoreland Coal Co. v Entech, Inc.*, 100 NY2d 352; *W.W.W. Assoc. v Giancontieri*, 77 NY2d 157; *Matter of Giblin v Village of Johnson City*, 75 AD3d 887; *Schron v Troutman Sanders LLP*, 20 NY3d 430; *Goldman v White Plains Ctr. for Nursing Care, LLC*, 11 NY3d 173; *Persky v Bank of Am. N.A.*, 261 NY 212; *Telaro v Telaro*, 25 NY2d 433; *Wilkins v Huber*, 303 AD2d 986; *Della Rocco v City of Schenectady*, 252 AD2d 82.) II. New York State law permits defendants to modify plaintiffs' prescription co-pays. (*Sega v State of New York*, 60 NY2d 183; *Henry Modell & Co. v Minister, Elders & Deacons of Ref. Prot. Dutch Church of City of N.Y.*, 68 NY2d 456; *Matter of City of Yonkers v Yonkers Fire Fighters, Local 628, IAFF, AFL-CIO*, 20 NY3d 651; *Citigifts, Inc. v Pechnik*, 112 AD2d 832, 67 NY2d 774; *Clark v Cuomo*, 66 NY2d 185.) III. The Appellate Division order should be affirmed because plaintiffs have not established damages. (*Gordon v Dino De Laurentiis Corp.*, 141 AD2d 435; *Lexington 360 Assoc. v First Union Natl. Bank of N. Carolina*, 234 AD2d 187; *R.P. Brennan Gen. Contrs. & Bldrs., Inc. v CPS 1 Realty, LP*, 63 AD3d 619; *Van Wagner Adv. Corp. v S & M Enters.*, 67 NY2d 186; *Zuckerman v City of New York*, 49 NY2d 557.)

*Lisa M. King*, Albany, *Rita J. Strauss* and *John F. Kershko*, for New York State Public Employees Federation, AFL-CIO, amicus curiae. The Appellate Division committed error of law by misinterpreting the parties' contract, and that misinterpretation deprives retirees of vested health insurance benefits. (*International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. [UAW] v Yard-Man, Inc.*, 716 F2d 1476, 465 US 1007; *Bidlack v Wheelabrator Corp.*, 993 F2d 603; *Bazzone v Automotive Indus. Welfare Fund*, 860 F2d 1088; *Myers v City of Schenectady*, 244 AD2d 845, 91 NY2d 812; *Della Rocco v City of Schenectady*, 252 AD2d 82; *Hudock v Village of Endicott*, 28 AD3d 923; *Williams v Village of Endicott*, 91 AD3d 1160; *Matter of Warner v Board of Educ., Cobleskill-Richmondville Cent. Sch. Dist.*, 108 AD3d 835; *South Rd. Assoc., LLC v International Bus. Machs. Corp.*, 4 NY3d 272.)

*D. Jeffrey Gosch*, Syracuse, for Civil Service Employees Association, Inc., Local 1000, AFSCME, AFL-CIO, amicus curiae. I. All New York cases that have construed contractual retiree health insurance language similar to the language at issue here have held such language requires the benefits be vested for life.

(*Myers v City of Schenectady*, 244 AD2d 845, 91 NY2d 812; *Della Rocco v City of Schenectady*, 252 AD2d 82; *Hudock v Village of Endicott*, 28 AD3d 923; *Williams v Village of Endicott*, 91 AD3d 1160; *Matter of Warner v Board of Educ., Cobleskill-Richmondville Cent. Sch. Dist.*, 108 AD3d 835; *DiBattista v County of Westchester*, 35 Misc 3d 1205[A], 2008 NY Slip Op 52731[U]; *Millington v Village of S. Glens Falls*, 30 Misc 3d 405; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326; *Matter of Incorporated Vil. of Lynbrook v New York State Pub. Empl. Relations Bd.*, 48 NY2d 398; *Chemical Workers v Pittsburgh Plate Glass Co.*, 404 US 157.) II. Even federal courts, including the Second Circuit, have held that contractual retiree health insurance is vested for the life of the retiree, unless there is clear evidence of a contrary intent. (*American Fedn. of Grain Millers, AFL-CIO v International Multifoods Corp.*, 116 F3d 976; *Schonholz v Long Is. Jewish Med. Ctr.*, 87 F3d 72; *Joyce v Curtiss-Wright Corp.*, 171 F3d 130; *International Union, United Auto., Aerospace, & Agric. Workers of Am. [UAW] v Yard-Man, Inc.*, 716 F2d 1476; *New York State Corr. Officers & Police Benevolent Assn., Inc. v State of New York*, 911 F Supp 2d 111; *Bazzone v Automotive Indus. Welfare Fund*, 860 F2d 1088; *Noe v PolyOne Corp.*, 520 F3d 548.) III. The Fourth Department majority's decision departs from established precedent and therefore should be reversed. (*Myers v City of Schenectady*, 244 AD2d 845, 91 NY2d 812; *Della Rocco v City of Schenectady*, 252 AD2d 82; *Williams v Village of Endicott*, 91 AD3d 1160; *Matter of Baker v Board of Educ.*, 29 AD3d 574, 7 NY3d 708; *Matter of Jones v Board of Educ. of Watertown City School Dist.*, 30 AD3d 967; *Matter of Warner v Bethlehem Cent. School Dist.*, 72 AD2d 824; *Dye v New York City Tr. Auth.*, 88 AD2d 899; *Antinore v State of New York*, 49 AD2d 6, 40 NY2d 921; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326.)

*Timothy G. Kremer*, Latham, *Jay Worona* and *Pilar Sokol*, for New York State School Boards Association, amicus curiae. The school district's actions at issue herein were permitted under statutory provisions that set out the conditions pursuant to which school districts may diminish retiree health care benefits in conformity with public policy.

### OPINION OF THE COURT

Chief Judge LIPPMAN.

This case calls on us to decide whether certain collective bargaining agreements conferred upon plaintiff retirees a vested

right to the same health insurance coverage they had when they retired and, if so, whether unilateral modifications to that coverage are nonetheless permissible under either the contract terms or the New York Insurance Moratorium Law. We hold that the contracts establish a vested right to a continuation of the same health coverage under which plaintiffs retired, until they reach age 70, and that the Insurance Moratorium Law does not provide a basis for abrogating retirees' vested contractual rights. However, because issues of fact remain as to the intended scope of plaintiffs' right, remittal for further factual development is required to determine whether the challenged increases in co-pays for prescription drugs amount to a breach of contract.

Plaintiffs are four former noninstructional employees of the Newfane Central School District in Niagara County who retired between 2003 and 2008. Defendants are the Newfane Superintendent of Schools, the Newfane Board of Education and its President, and the Newfane Central School District (collectively, the District). During their employment, plaintiffs were members of a collective bargaining unit represented by the Civil Service Employees Association (CSEA) in negotiations concerning a series of collective bargaining agreements (CBAs) with the District. One of the plaintiffs retired while the 1999-2003 CBA was in effect; the other three plaintiffs retired under the 2003-2007 CBA.[1]

Each CBA contained a section describing the health insurance plans available to employees, including the various co-pay amounts the insured would owe under each plan for prescription drugs. The 1999-2003 and 2003-2007 CBAs provided that employees could choose between designated insurance plans. Although two of the plans in the 1999-2003 contract were supplanted by a different plan in the 2003-2007 version, the co-pay amounts in both contracts were based on a two-tiered system assigning co-pays depending on a prescription drug's classification as either generic or brand-name. The co-pays ranged from $0 to $5.

---

1. Despite the fact that the successor CBA was retroactively effective to 2007, it is undisputed that even those plaintiffs who retired in 2008 effectively retired under the 2003-2007 CBA, since the subsequent CBA was not executed until 2010. This stipulation accords with the reality that these plaintiffs were not represented by the CSEA in the portion of the negotiations that took place after their retirement, and that the bargains struck in the 2007-2012 agreement would thus not be enforceable by them (*see Chemical Workers v Pittsburgh Plate Glass Co.*, 404 US 157, 172 [1971]; *Matter of Aeneas McDonald Police Benevolent Assn. v City of Geneva*, 92 NY2d 326, 332 [1998]).

The CBAs in effect when plaintiffs retired also provided that employees could opt into a "flexible spending" benefit program that allowed them to contribute pretax dollars into an account to be used for health care expenses, including co-pays. Contributions were capped at varying amounts, depending on an employee's enrollment status. The 1999-2003 CBA established flexible spending maximums at $215 for single enrollees, $430 for couples, and $480 for families. The 2003-2007 CBA increased these caps to $250, $500, and $540, respectively.

In January 2010, well after plaintiffs had retired, the CSEA and the District executed a successor CBA, which was retroactively effective to 2007 and set to expire in 2012. The 2007-2012 CBA implemented changes to both the co-pay regime and the flexible spending benefit. The two-tiered co-pay system was converted to a three-tiered model with charges of $7 for generic, $15 for "preferred brand name," and $35 for "non-preferred brand name" prescription drugs. The new CBA also increased the caps on enrollees' flexible spending contributions to $325 (single), $625 (couple), and $700 (family). In addition, the 2007-2012 contract introduced an employer matching program under which the District would furnish $1 for each dollar contributed by enrollees, up to $50, $75, and $100, for each respective category.

Provisions concerning health insurance benefits for retirees were identical across the three CBAs. Section 6.4.6, entitled "Health Insurance for Retired Employees," provided that "[r]etired employees shall be eligible to continue group health insurance upon payment of premium to the District five (5) days prior to the first of the month in which the premium is due."[2] Section 6.5.3 provided that "[f]ull-time employees who retire from the Newfane Central School District under the New York State Employees' Retirement System plan shall be entitled to receive credit toward group health insurance premiums (including District contribution toward Flexible spending account) for accumulated sick leave." The premium credit was to be calculated as a percentage according to a formula and to be paid by the District "until the employee reaches age 70." The same provision contained the sentence that gave rise to the present litigation, "[t]he coverage provided shall be the coverage which is in effect for the unit at such time as the employee retires."

---

2. Because plaintiffs here fall within the confines of section 6.5.3, we need not address retirees' rights governed by section 6.4.6.

By letters dated December 30, 2009, the District informed plaintiffs that their co-pays would now be governed by the three-tier system under the terms of the 2007-2012 CBA, resulting in an increase from their previous co-pay charges of between $7 and $30. Plaintiffs were also notified of the increased flexible spending caps, though the letter made no mention of the employer matching program.

Plaintiffs subsequently commenced this action for breach of contract, alleging that by increasing their co-pays, the District had violated the terms of the CBAs in effect when plaintiffs retired. They sought a declaratory judgment as to their rights under the CBAs, reinstatement of the co-pay rates in effect at the time of their retirement, and reimbursement for additional expenditures made as a result of the modifications.

The complaint alleged that the language in section 6.5.3, which applied to plaintiffs as full-time employee-members of the New York State Employees' Retirement System who retired with accumulated sick leave, entitled them to the same health insurance coverage they were receiving upon retirement, until they reached age 70, and that the co-pay increase violated that right. After Supreme Court denied its motion to dismiss, the District filed an answer asserting, insofar as relevant here, the affirmative defenses that plaintiffs failed to state a cause of action, that the CBAs in effect when plaintiffs retired had expired and were superseded by the 2007-2012 CBA, and that the challenged modifications were permissible under New York State law.

Plaintiffs then moved for summary judgment and submitted extrinsic evidence in the form of their own affidavits attesting that the parties intended for the District to maintain health insurance coverage for retirees until age 70 that was identical to the coverage in effect upon their retirement, along with the draft and final versions of the CBAs and predecessor agreements. The District cross-moved for summary judgment. Defendants argued, in relevant part, that the modifications to plaintiffs' health care benefits were permitted under chapter 30 of the 2009 Laws of New York State (Insurance Moratorium Law) because corresponding changes were made to the benefits of active employees. They also argued that the complaint failed to allege an injury since plaintiffs made no claim that the enhanced flexible spending benefit was insufficient to offset the more expensive co-pays. In support, the District submitted affidavits of the School District's Business Administrator and the

President of the Board of Education, both of whom were actively involved in the collective bargaining negotiations for the 2007-2012 CBA.

Supreme Court granted summary judgment for plaintiffs and denied defendants' cross motion for summary judgment. Finding the contract language unequivocal, the court held that plaintiffs' right to insurance coverage "equivalent to that in effect at the time each plaintiff retiree retired" had vested upon retirement, rejecting the District's argument that plaintiffs' right had expired with the CBAs under which they had retired. The court further held that the increased co-pays violated that right. The District was ordered to reinstate plaintiffs' prior health insurance plans and to compensate plaintiffs for the sums they expended in excess of their obligations under the reinstated coverage, plus interest and costs. The court also concluded that the Insurance Moratorium Law was not meant to affect contractual rights, but rather only prescribed "a bottom floor, beneath which school districts . . . were forbidden to go in diminishing benefits." Finally, acknowledging that plaintiffs' injury was indeterminate due to the potential offset provided by the increased flexible spending limits, the court found that summary judgment was proper despite the need for an accounting to calculate damages.

The Appellate Division reversed, denied plaintiffs' motion, granted defendants' cross motion for summary judgment, and dismissed the complaint (101 AD3d 1623 [4th Dept 2012]). The court found the contract did not prevent the District from increasing plaintiffs' co-pays because the language in section 6.5.3 "does not specify that an equivalent level of coverage will continue during retirement" (*id.* at 1624). With regard to the Moratorium Law, the court found that "[i]nasmuch as the benefits for represented employees were likewise reduced, defendants have complied with the statutory requirement that they not reduce plaintiffs' coverage below the level of coverage provided to active employees" (*id.*).

Two Justices dissented and, because they found the extrinsic evidence inconclusive, would have remitted the case for a hearing to consider the meaning of the terms "benefit" and "coverage" in sections 6.4.6 and 6.5.3 and whether such terms established different rights for retirees who retired with accumulated sick leave (*id.* at 1625-1626). Plaintiffs appealed to this Court as of right (*see* CPLR 5601 [a]).

As a general rule, contractual rights and obligations do not survive beyond the termination of a collective bargaining agreement (*Litton Financial Printing Div., Litton Business Systems, Inc. v NLRB*, 501 US 190, 207 [1991]). However, "[r]ights which accrued or vested under the agreement will, as a general rule, survive termination of the agreement" (*id.*), and we must look to well established principles of contract interpretation to determine whether the parties intended that the contract give rise to a vested right. "[A] written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (*Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). The language upon which plaintiffs base their claim reads as follows: "[t]he coverage provided shall be the coverage which is in effect for the unit at such time as the employee retires."

■ Contrary to the Appellate Division majority's conclusion, the plain meaning of this provision unambiguously establishes that plaintiffs have a vested right to the "coverage which [was] in effect for the unit at such time as [they] retire[d]," until they reach age 70. It is well established that when reviewing a contract, "[p]articular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties manifested thereby" (*Riverside S. Planning Corp. v CRP/Extell Riverside, L.P.*, 13 NY3d 398, 404 [2009]). The phrase "at such time as the employee retires" is most logically read to qualify the immediately preceding phrase, "the coverage which is in effect for the unit." Moreover, the phrase "[t]he coverage provided *shall* be" evinces the mandatory nature of the obligation, insulating it from unilateral alteration. As to duration, this sentence appears in the same CBA section affording retirees who retire as full-time employees under the New York State Employees' Retirement System the right to use accumulated sick leave as a credit against health insurance premiums during retirement "until the employee reaches age 70." Given the sentence's placement, a clear inference can be drawn that the parties intended the right to continued coverage to operate for the same period as the section as a whole, i.e., until the employee reaches 70. Including the right to coverage in close proximity to this durational language is also evidence of an intent that it should vest upon retirement rather than terminate with the expiration of the CBA. Since each CBA is typically effective for only a few years, a construction of the operative sentence in section 6.5.3

that would limit it to the duration of the agreement has the potential of "render[ing] the benefit inconsequential, . . . as the plaintiffs no longer would be in a position to negotiate with the [District] over future benefits" (*Poole v City of Waterbury*, 266 Conn 68, 95, 831 A2d 211, 228 [2003]).

In construing this contract language differently, the Appellate Division placed undue emphasis on the absence of an express covenant that the "level of health coverage will not be reduced or that the annual cost will not increase" (101 AD3d at 1624), drawing the conclusion therefrom that the promise of continuing coverage necessarily expired along with the relevant CBA. That conclusion both conflicts with the most natural reading of the sentence and renders meaningless the durational provision "until the employee reaches age 70." As the contract is clear on its face, there is no need for this Court to rule on whether New York applies an inference of vesting for retiree health insurance rights (*see e.g. International Union, United Auto., Aerospace, & Agric. Implement Workers of Am. [UAW] v Yard-Man, Inc.*, 716 F2d 1476 [6th Cir 1983]).

The crux of the parties' disagreement, then, is not the existence but the scope of the vested right. Plaintiffs contend that their entitlement to the "coverage which is in effect for the unit at such time as the employee retires" obligates the District to provide plaintiffs with exactly the same plans described in the CBAs. Under this approach, "coverage" would encompass both benefits, such as covered procedures and network providers, as well as costs, including co-pays ranging from $0 to $5; this "coverage" would be locked in upon retirement and remain frozen until the insured's 70th birthday. By extension, the limitations on plaintiffs' contributions to their flexible spending accounts presumably would also remain fixed at the levels specified in the CBAs in effect upon their retirement for the same duration, and plaintiffs would be unable to benefit from the employer matching program introduced in the 2007-2012 CBA. Notably, the term "coverage" is not defined in either contract; nor is there an explanation of whether the term denotes identical benefits and/or costs. However, plaintiffs argue that their interpretation is reasonable since, once employees retire, they are no longer represented by the union in collective bargaining negotiations (*see Chemical Workers v Pittsburgh Plate Glass Co.*, 404 US 157, 172, 184 [1971] [holding that retiree benefits are a permissive, not mandatory, subject of collective bargaining]), and, as a result, it is "logical to assume that the bargaining unit

intended to insulate retirees from losing important insurance rights during subsequent negotiations by using language in each and every contract which fixed their rights to coverage as of the time they retired" (*Della Rocco v City of Schenectady*, 252 AD2d 82, 84 [3d Dept 1998]).

Defendants, on the other hand, argue that plaintiffs' entitlement to the "same coverage" should be afforded a more flexible interpretation. Under this view, the contract language merely obligates defendants to provide *equivalent* coverage to that which was "in effect for the unit at such time as the employee retires," allowing the District to modify retirees' benefits so long as such modifications do not substantially alter the overall package. The District contends that agreeing to fixed medical coverage would have been contrary to the interests of both parties at the bargaining table. As recognized by the Sixth Circuit, flexible terms of coverage allow employers to account for constantly rising health care costs, since "it is the rare medical innovation that costs *less* than the one it replaces" (*Reese v CNH Am. LLC*, 694 F3d 681, 683-684 [6th Cir 2012]), as well as the reality that insurance plans do not remain static over time. The District also argues that inflexibility is equally unappealing for retirees, who "want eligibility for . . . up-to-date medical procedures and drugs" (*id.* at 684), and would presumably derive benefit from inflationary or otherwise negotiated increases to benefits such as flexible spending contributions.

In our view, the parties have advanced two plausible interpretations of the operative provision in section 6.5.3 of the CBAs, making it appropriate for the Court to consider extrinsic evidence outside the four corners of the contracts (*see W.W.W. Assoc. v Giancontieri*, 77 NY2d 157, 162 [1990]). The documentary evidence submitted on summary judgment does not, however, resolve the ambiguity, particularly because the affidavits focus largely on whether, in negotiating the 2007-2012 CBA, the CSEA and the District intended for the co-pay modifications to apply to retirees. Neither the affidavits nor the final and draft versions of predecessor CBAs shed light on the nature and scope of the phrase in section 6.5.3 mandating that "[t]he coverage provided shall be the coverage which is in effect for the unit at such time as the employee retires." Because an issue of fact remains as to whether the parties intended for the right to the "same coverage" to preclude any modifications to the benefits or their attendant costs, including prescription co-pays, it is necessary to remit the case to Supreme Court for a

hearing on this issue. Inquiry is required into the definitional breadth of "coverage" as well as the degree of precision with which the parties employed the phrase "in effect for the unit at such time as the employee retires."

In connection with remittal, we would note that courts in some jurisdictions have had occasion to address the scope of a vested right to health coverage during retirement as a question of law, rather than fact (see e.g. Poole, supra; Reese v CNH Am. LLC, 694 F3d 681 [6th Cir 2012]; Diehl v Twin Disc, Inc., 102 F3d 301 [7th Cir 1996]).[3] What is evident, however, is that unions and employers are free to negotiate the terms of such provisions as they see fit and the terms of active employees' health insurance coverage during retirement are properly subjects for collective bargaining. Determining the scope of the right conferred in the instant case thus requires further factual development regarding the parties' intent.

Nevertheless, should the District successfully establish that the parties contemplated a vested right to equivalent, rather than identical, coverage until age 70, the reasoning of our sister courts is instructive in evaluating whether the modifications to plaintiffs' co-pay charges violated their contractual right. In particular, a finding that the parties intended for coverage to evolve in tandem with fluctuations in the health care market and advances in medical technology would logically place the burden on plaintiffs to "demonstrate that the changes to their benefits are not substantially commensurate with the benefits provided under the agreements in effect at the time of the retirees' retirement, when viewing the group of plaintiffs as a whole" (Poole, 266 Conn at 105, 831 A2d at 234). Stated another way, the "changes should be examined for their effect on the class of retirees as a whole, to determine if they have significantly reduced their general level of benefits" (Diehl, 102 F3d at 311). Scrutinizing the changes "in their totality for their effect upon the class of retirees as a group" (id. at 311), rather than evaluating any net cost increases or diminished benefits for individual plaintiffs in isolation, would ensure the efficient

---

**3.** It was also clearer in those cases that the parties contemplated future modifications to health coverage—due either to the inclusion of language suggesting that the employers retained the right to make alterations (see Poole, 266 Conn at 100-103, 831 A2d at 231-233; Diehl, 102 F3d at 309-310), or to past practices indicative of the parties' understanding that reasonable modifications to benefits were permissible (see Reese, 694 F3d at 684; see also Zielinski v Pabst Brewing Co., Inc., 463 F3d 615, 618-619 [7th Cir 2006]).

adjudication of claims and allow the District a reasonable framework within which to evaluate future modifications. Depending on findings as to the intended definition of "coverage," whether modifications "substantially reduced the provision of services" and/or "substantially increased the cost" of health care should thus depend on the effect of the changes on "the group of plaintiffs as a whole" (*Poole*, 266 Conn at 107, 831 A2d at 235).

Here, the relevant "group" is the retirees who, like plaintiffs, qualify for continuing coverage under section 6.5.3 of the CBAs. If the District successfully demonstrates that the parties intended to create an entitlement to coverage equivalent to that which they received upon retirement, and the cost of co-pays is deemed a material aspect of the "coverage" promised, consideration should also be given to the increase in the flexible spending benefit insofar as it may offset the significance of the modification.

■ Finally, we reject the District's argument that, regardless of plaintiffs' contractual right to the "same coverage," the 2009 Insurance Moratorium Law allows the District to modify plaintiffs' coverage because a corresponding modification was made in the 2007-2012 CBA for active employees. The statute provides, in relevant part, that,

> "[f]rom on and after June 30, 1994 until May 15, 2010, a school district, board of cooperative educational services, vocational education and extension board or a school district . . . shall be prohibited from diminishing the health insurance benefits provided to retirees and their dependents or the contributions such board or district makes for such health insurance coverage below the level of such benefits or contributions made on behalf of such retirees and their dependents by such district or board *unless a corresponding diminution of benefits or contributions is effected* [sic] *from the present level during this period by such district or board from the corresponding group of active employees for such retirees*" (L 1994, ch 729, as extended by L 2009, ch 30 [emphasis supplied]).

The District's interpretation of the statute relies on the erroneous conclusion that the legislature's silence regarding contracted-for health coverage should be read as an intention to abrogate contractual rights. However, the Insurance Moratorium

Law's primary purpose was to prevent school districts from eliminating or reducing retiree health insurance benefits that were *voluntarily conferred* as a matter of school district policy, not rights negotiated in the collective bargaining context (*see* Assembly Mem in Support, Bill Jacket, L 1996, ch 83 at 6, 1996 McKinney's Session Laws of NY at 2049-2050). The 1994 final report of the Temporary Task Force on Health Insurance for Retired Educational Employees, which originally recommended the legislation, proposed amending the then-temporary law to apply to contractually vested rights. Specifically, the Task Force proposed that the legislature

> "mak[e] it clear that any negotiated health insurance benefits for present employees upon retirement can be affected in the same manner as any retiree's health benefits can be under the present temporary legislation; i.e., *once retired a retiree's health insurance benefits may be diminished in a similar manner as negotiated for active employees without violation of the negotiated provision covering future retirees*" (Final Rep of Temp Task Force on Health Ins for Retired Educ Empls at 6 [Dec. 1, 1994] [emphasis supplied]).

Significantly, the legislature never adopted this proposal, or any of the Task Force's proposed amendments to the temporary statute then in effect, but instead enacted it into permanent law unchanged.

In light of this legislative history, as well as the statute's plain language, Supreme Court correctly concluded that the statute only prescribed "a bottom floor, beneath which school districts and certain boards were forbidden to go in diminishing benefits. It was not meant to eviscerate contractual obligations and decades of contract law."

Accordingly, the order of the Appellate Division should be modified, without costs, by denying defendants' cross motion for summary judgment and, as so modified, affirmed.

Judges GRAFFEO, READ, SMITH, PIGOTT, RIVERA and ABDUS-SALAAM concur.

Order modified, without costs, by denying defendants' cross motion for summary judgment and, as so modified, affirmed.