Evans v Deposit Cent. Sch. Dist. (2020 NY Slip Op 02843)





Evans v Deposit Cent. Sch. Dist.


2020 NY Slip Op 02843


Decided on May 14, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: May 14, 2020

529428

[*1]Sarah M. Evans et al., Respondents,
v
Deposit Central School District et al., Appellants.

Calendar Date: March 24, 2020

Before: Clark, J.P., Mulvey, Devine, Pritzker and Colangelo, JJ.


Hogan, Sarzynski, Lynch, DeWind & Gregory, LLP, Johnson City (Cameron B. Daniels of counsel), for appellants.
Mackenzie Hughes LLP, Syracuse (W. Bradley Hunt of counsel), for Sarah M. Evans, respondent.
Hinman, Howard & Katell, LLP, Binghamton (Paul T. Sheppard of counsel), for Betty J. Kaplan, respondent.



Pritzker, J.
Appeal from an order of the Supreme Court (Lambert, J.), entered April 4, 2019 in Delaware County, which, among other things, granted plaintiffs' motions for summary judgment.
Plaintiffs were teachers employed by defendant Deposit Central School District who retired from their positions in June 2011 and were subject to a collective bargaining agreement (hereinafter CBA) between the Deposit Teachers Association (hereinafter the DTA) and defendants. By the time plaintiffs resigned, a CBA that was effective between July 1, 2006 and June 30, 2010 (hereinafter the old CBA) had expired that provided, among other things, 100% health insurance coverage for retired employees and their dependents. A new agreement between the DTA and defendants was ratified in October 2013. This agreement was retroactive to July 1, 2010 and remained in effect through June 30, 2015 (hereinafter the new CBA) and revised the old CBA by lowering health insurance coverage to 95% for employees who retired between July 1, 2010 and June 30, 2013 and their families, among other things. The new CBA further stated that those retired employees who wish to participate in the Blue Cross/Blue Shield of Central New York Classic Blue Region-wide Plan (hereinafter Blue Cross Plan) may do so by paying five percent of the Preferred Provider Organization Plan H premium and the difference between the plan premiums.
In January 2014, plaintiffs individually submitted verified claims to defendants stating that their vested contract rights were violated when they were required to pay five percent of the retiree health insurance premium. Plaintiffs and others commenced this action in October 2014, arguing that the old CBA, rather than the new CBA, governed their retirement benefits. Defendants answered in May 2016. Then, in June 2016, plaintiffs amended their complaint, requesting that Supreme Court, among other things, (1) declare that the old CBA was still effective when they retired and that they are entitled to the same benefits provided to retirees who retired between 2006 and 2010 and (2) order a monetary judgment against defendants for the breach of contract. Defendants answered and then subsequently moved for summary judgment dismissing the complaint. Plaintiffs separately moved for summary judgment. In April 2019, Supreme Court, among other things, granted plaintiffs' motions for summary judgment, finding that the old CBA was still effective at the time that plaintiffs retired and that there was no evidence to find that they waived their retiree insurance benefits under the old CBA. Defendants appeal.
As Supreme Court noted, and the parties do not dispute, although we are dealing with summary judgment motions, "the essential facts are not in dispute." As such, this case presents questions of law — specifically, "what health insurance provisions apply to . . . plaintiffs — the [old] CBA or the [new] CBA" and whether plaintiffs' health insurance rights vested under the old CBA. As relevant here, Civil Service Law § 209-a (1) (e) "requires an employer to continue all the terms of an expired CBA while a new agreement is being negotiated," as "the assumption is that all terms of a CBA remain in effect during collective bargaining of a successor agreement" (Matter of City of Yonkers v Yonkers Fire Fighters, Local 628, IAFF, AFL-CIO, 20 NY3d 651, 657 [2013] [internal quotation marks and citation omitted]; see Matter of City of Utica [Zumpano], 91 NY2d 964, 965 [1998]). Nevertheless, "contractual rights and obligations do not survive beyond the termination of a [CBA]. However, rights which accrued or vested under the [CBA] will, as a general rule, survive termination of the [CBA]" (Kolbe v Tibbetts, 22 NY3d 344, 353 [2013] [internal quotation marks, brackets and citation omitted]). Thus, courts "must look to well[-]established principles of contract interpretation to determine whether the parties intended that the contract give rise to a vested right" (id.).
"An agreement that is clear and complete will be enforced according to the terms as written by the parties" (Hudock v Village of Endicott, 28 AD3d 923, 924 [2006] [citations omitted]; accord Matter of Delmar Pediatrics Asthma & Allergy Care, P.C. [Pasternack-Looney], 35 AD3d 987, 988 [2006]). "In determining whether a [CBA] creates a vested right to future benefits, courts should not construe ambiguous writings to create lifetime promises. Critically, when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life" (Village of Old Brookville v Village of Muttontown, 179 AD3d 972, 975 [2020] [internal quotation marks and citation omitted]). To that end, only when an agreement is ambiguous or subject to more than one interpretation is it appropriate to "[r]esort to extrinsic evidence to determine the parties' intent" (Hudock v Village of Endicott, 28 AD3d at 924). If extrinsic evidence shows that it was the defendant's intent to vest rights under a contract or shows that there was established precedent of such practice, rights are considered vested (see Della Rocco v City of Schenectady, 252 AD2d 82, 84 [1998], lvs dismissed 93 NY2d 999, 1000 [1999]; Myers v City of Schenectady, 244 AD2d 845, 847 [1997], lv denied 91 NY2d 812 [1998]). Especially when considering if retirees' rights vested to enforce CBAs, this Court has put great weight on whether retirees had voting rights because, if there were no such rights, "it is logical to assume [from the absence of any such durational language of how long retirees will receive benefits] that the bargaining unit intended to insulate retirees from losing important insurance rights during subsequent negotiations by using language in each and every contract which fixed their rights to coverage as of the time they retired" (Della Rocco v City of Schenectady, 252 AD2d at 84; accord Matter of Warner v Board of Educ., Cobleskill-Richmondville Cent. Sch. Dist., 108 AD3d 835, 837 [2013], lv denied 22 NY3d 859 [2014]; see Myers v City of Schenectady, 244 AD2d at 847).
Initially, Supreme Court properly found that, pursuant to Civil Service Law § 209-a (1), because the new CBA had not yet been ratified at the time plaintiffs retired, the terms of the old CBA remained in effect pending the negotiation of the new CBA (see Matter of Evans v Deposit Cent. Sch. Dist., 156 AD3d 1024, 1024 [2017]; Evans v Deposit Cent. Sch. Dist., 139 AD3d 1172, 1173 [2016]; see also Matter of City of Utica [Zumpano], 91 NY2d at 965; Matter of City of Yonkers v Yonkers Fire Fighters, Local 628, IAFF, AFL-CIO, 20 NY3d at 657). Thus, the question turns to whether plaintiffs' contractual rights vested under the old CBA to survive its termination.
The old CBA's article dictating health insurance benefits states that "[t]he Board will pay the employees share of the [Blue Cross] Plan, Option 2 as follows: a. 100% individual"[;] "b. 100% dependent." The old CBA then lists "Retired employees (future and those who have been covered in the past) in the [Blue Cross] Plan at the district participation rate in effect on 1/1/84 (exclusive of those retirees that accept employment wherein they have equal or better coverage)" and defines "Retired" as eligible to retire under the New York State Teachers Retirement System." The old CBA, however, does not specify the duration that retired employees will receive benefits and is thus "silent as to the duration of retiree benefits" (Village of Old Brookville v Village of Muttontown, 179 AD3d at 975 [internal quotation marks and citation omitted]; compare Kolbe v Tibbetts, 22 NY3d at 353). Moreover, although the old CBA defines the meaning of retired, the language "(future and those who have been covered in the past) in the [Blue Cross] Plan at the district participation rate in effect on 1/1/84 (exclusive of those retirees that accept employment wherein they have equal or better coverage)" is ambiguous and permits this Court to look outside the contract to extrinsic evidence to discover the intent behind this provision of the old CBA (compare Hudock v Village of Endicott, 28 AD3d at 924).
The evidence adduced supports the conclusion that it was defendants' intent to provide full coverage for retired employees such as plaintiffs. Specifically, in support of her summary judgment motion, plaintiff Sarah M. Evans submitted defendants' amended response to her demand for interrogatories, in which they stated that they interpreted the language "district participation rate in effect of 1/1/84" "to refer to those employees who retire under the [old CBA] receiving the same benefit as employees who were retired as of 1/1/84." Additionally, in support of their summary judgment motion, defendants submitted plaintiff Betty J. Kaplan's deposition transcript, wherein she testified that, upon retirement, she expected to receive 100% coverage of her insurance benefits just as those previous teachers who retired before her had received. Accordingly, defendants' response to Evans' demand for interrogatories shows the intent that retired teachers would receive 100% coverage under the old CBA, which is supported by Kaplan's testimony that such precedent existed (see Myers v City of Schenectady, 244 AD2d at 847; see also Della Rocco v City of Schenectady, 252 AD2d at 84). Moreover, affidavits submitted by plaintiffs revealed that retirees were not permitted to vote on the new CBA. Such lack of voting rights further indicates that defendants intended to protect plaintiffs from losing their health insurance benefits, and thus plaintiffs' rights vested under the old CBA so as to survive its termination (see Matter of Warner v Board of Educ., Cobleskill-Richmondville Cent. Sch. Dist., 108 AD3d at 837; Della Rocco v City of Schenectady, 252 AD2d at 84; Myers v City of Schenectady, 244 AD2d at 847).
Lastly, we are unpersuaded by defendants' contention that plaintiffs waived their health insurance rights under the old CBA when they ratified the new CBA by their receipt of retroactive pay in 2014 for the 2010-2011 school year. There is no dispute that Kaplan and Evans received this retroactive pay due to the increased 2010-2011 salary as listed under the new CBA. The essential question is then whether plaintiffs waived their rights to be covered by the new CBA instead of the old CBA as a matter of law. The record reveals that both Kaplan and Evans believed that the retroactive increased salary payments were because of precedent set that retired teachers receive an increased salary and that they did not believe this affected their rights to receive full coverage for health insurance under the old CBA. Moreover, as Kaplan made clear in her letter of resignation, she had an agreement with defendants that she would receive the retroactive payment while retaining the benefits of the old CBA. Furthermore, the record reveals that both Kaplan and Evans have been making their health insurance payments under protest and have expressed to defendants that acceptance of such payments would not constitute a waiver (see Mitchell v Leahey, 289 AD2d 1002, 1002 [2001]). Therefore, it was not "clear, unmistakable and without ambiguity" that Kaplan and Evans were "intentional[ly] relinquish[ing]" their rights to be protected under the old CBA (Cloke v Findlan, 165 AD3d 1545, 1548 [2018] [internal quotation marks and citations omitted]). Thus, Supreme Court properly inferred that it was not Kaplan's or Evans' intention to waive the benefits of the old CBA (see id.; see also Hooper Assoc. v AGS Computers, 74 NY2d 487, 492 [1989]; Matter of Chenango Forks Cent. School Dist. v New York State Pub. Empl. Relations Bd., 95 AD3d 1479, 1484 [2012], affd 21 NY3d 255 [2013]; Matter of County of Erie v State of New York, 14 AD3d 14, 18 [2004]). Accordingly, Supreme Court properly granted plaintiffs' motions for summary judgment and denied defendants' motion for summary judgment.
Clark, J.P., Mulvey, Devine and Colangelo, JJ., concur.
ORDERED that the order is affirmed, with one bill of costs.