Gaudette v Gaudette

2026 NY Slip Op 03039

May 14, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

Linda Gaudette, Respondent,

v

Bruce Gaudette, Appellant.

Decided and Entered:May 14, 2026

CV-25-0184

Calendar Date: March 26, 2026

Before: Aarons, J.P., Pritzker, Reynolds Fitzgerald, Fisher And Mcshan, JJ.

Cynthia Feathers, Saratoga Springs, for appellant.

Hug Law PLLC, Albany (Matthew C. Hug of counsel), for respondent.

[*1]

Fisher, J.

Appeal from an order of the Supreme Court (Keith Bruno, J.), entered December 30, 2024 in Clinton County, which granted plaintiff's motion to set aside the prenuptial agreement.

This Court is familiar with the facts underlying this case, having considered the prenuptial agreement that is the subject of the instant appeal once before (222 AD3d 1313 [3d Dept 2023]). Briefly, the parties were married in Canada in 1977 after signing a prenuptial agreement wherein, among other things, defendant (hereinafter the husband) agreed to contribute a certain sum of money toward furnishing the marital residence and to pay plaintiff (hereinafter the wife). The parties ultimately moved to New York and resided there for the last 40 years of their marriage until the wife commenced this divorce action in 2020.FN1 The husband moved to enforce the prenuptial agreement, which Supreme Court (Favreau, J.) denied on the grounds that the agreement was void due to ambiguous and undefined terms. On appeal, we agreed with Supreme Court that the agreement was ambiguous, but determined that extrinsic evidence resolved certain ambiguities in all but article III of the agreement. We therefore remitted the matter for an evidentiary hearing to allow the parties to submit further extrinsic evidence to aid the court in attempting to resolve the ambiguities and ascertain the parties' intent regarding the prenuptial agreement. Following such hearing, Supreme Court (Bruno, J.) determined that the new evidence did not clarify article III and again set aside the prenuptial agreement, therefore denying the husband's motion to enforce its terms. The husband appeals.

We affirm. Given that we have previously found the prenuptial agreement ambiguous, our review distills to whether the extrinsic evidence produced at the hearing resolved the ambiguities in article III (see Matter of Koegel, 184 AD3d 764, 765-766 [2d Dept 2020], affd 37 NY3d 444 [2021]). It is axiomatic that "duly executed prenuptial agreements are generally valid and enforceable given the strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (Carter v Fairchild-Carter, 187 AD3d 1360, 1361 [3d Dept 2020] [internal quotation marks, brackets and citations omitted]; see Van Kipnis v Van Kipnis, 11 NY3d 573, 577 [2008]). As with any contract, there must be "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound" (Hogan v Bullock, 233 AD3d 1321, 1323-1324 [3d Dept 2024] [internal quotation marks and citations omitted]). Where, as here, an agreement is ambiguous in its terms, the court should resort to extrinsic evidence in an attempt to clarify them, as "[s]triking down a contract as indefinite and in essence meaningless is at best a last resort" (Tompkins Fin. Corp. v John M. Floyd & Assoc., Inc., 144 AD3d 1252, 1254 [3d Dept 2016] [internal quotation marks and citations omitted]; see Evans v Deposit Cent. Sch. Dist., 183 AD3d 1081, 1083[*2][3d Dept 2020]; Matter of Kohn, 144 AD3d 684, 687 [2d Dept 2016]). When undertaking this analysis, "the court should examine the entire contract and consider the relation of the parties and the circumstances under which it was executed. Particular words should be considered, not as if isolated from the context, but in the light of the obligation as a whole and the intention of the parties as manifested thereby" (Zollo v Adirondack Lodges Homeowners Assn., Inc., 225 AD3d 973, 975 [3d Dept 2024] [internal quotation marks, brackets and citations omitted]; see Hogan v Bullock, 233 AD3d at 1324).

As relevant to our review of the entire prenuptial agreement, article II provided that each party agreed to contribute to household expenses "in proportion to their respective means." Article III (1) obligated the husband to expend $1,000 within the first year of their marriage on "furniture and household effects" for their residence, which would become the separate property of the wife. He further agreed to keep these items in good condition and to replace them when they became worn or destroyed. Article III (2) required the husband to pay the total sum of $10,000 to the wife "during the continuance of their marriage as soon as convenient for him" or to convey to the wife property "at a valuation acceptable to the . . . wife."

Despite the testimony of the parties and the husband's expert witness — a Canadian lawyer familiar with prenuptial agreements from this time period and province — we find that the ambiguities in article III persist. As to section (1), on our initial remand we highlighted that the agreement did not define whether appliances and other items were included as "household effects." Neither party's testimony answered this question but, rather, they revealed further competing understandings of the term. For instance, the husband maintained that "household effects" meant "furniture, household items, like kitchen, living-room set, bedroom set" but excluded everything in the garage. On the other hand, the wife testified that it meant "everything in the house" including at least some of the garage contents, if not all items therein. Furthermore, reading this clause within the context of the rest of the agreement, it is unclear how article II operated in conjunction with this section, i.e., whether the husband was required to expend $1,000 on household effects separately and in addition to his obligation to proportionally contribute to household expenses generally, or whether that sum was inclusive of his proportion of household expenses but represented his minimum expenditure for the first year.

As to his obligation to pay the wife $10,000 in cash or other property, the husband testified that "what is defined as a gift and what is defined as meeting the obligations of the [agreement] I don't think are clear." We concur. While the agreement specifies that any property purportedly satisfying this provision must be of acceptable value to the wife, [*3]the husband's expert testified that he was not required to notify the wife that any particular gift or payment was in satisfaction of this requirement. The husband further testified that he met this obligation through purchasing a car that, although apparently for both parties' use, was titled in the wife's name.FN2 However, as the husband acknowledged, it is unclear if the agreement counted any gift given to the wife by the husband toward the $10,000, or whether any property conveyed must be designated as fulfilling his obligation under the prenuptial agreement with notice to the wife — who must then accept it. Indeed, at oral argument the husband conceded that it was not even clear if the monetary sums in the agreement were in Canadian or U.S. dollars. The wife, for her part, testified that she did not believe anything the husband purchased throughout their 43-year marriage satisfied this obligation, indicating that there was no meeting of the minds as to how this requirement was to be met.

For the foregoing reasons, we agree with Supreme Court that the prenuptial agreement remained ambiguous after the evidentiary hearing (see 6115 Niagara Falls Blvd., LLC v Calamar Constr. Mgt., Inc., 193 AD3d 1436, 1440 [4th Dept 2021]; Del Carmen Libasci v Singares, 128 AD3d 1239,1241 [3d Dept 2015]). Furthermore, because the agreement lacked any severance clause and the articles are closely intertwined, Supreme Court properly set aside the entire agreement as unenforceable (see F & K Supply v Willowbrook Dev. Co., 288 AD2d 713, 716 [3d Dept 2001]; compare Chiarizia v Xtreme Rydz Custom Cycles, 43 AD3d 1353, 1354 [4th Dept 2007]). We have examined the parties' remaining contentions and have found them to be without merit or rendered academic.

Aarons, J.P., Pritzker, Reynolds Fitzgerald and McShan, JJ., concur.

ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1

This Court previously determined that the prenuptial agreement would be interpreted under New York law (see 222 AD3d at 1314, n 2).

Footnote 2

The wife maintained that this was a clerical error on the part of the dealership and that the car was intended to be titled in both her and the husband's names.