*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 7, 2016                    520455
_____

VALERIE SUTTON,

                    Respondent,

        v

SCOTT BURDICK, as Executor of
    the Estate of WESLEY BURDICK,          MEMORANDUM AND ORDER
    Deceased, et al.,
                    Respondents,
        and

RAYMOND HARVEY,

                    Appellant.
_____


Calendar Date:  November 19, 2015

Before:  Peters, P.J., Lahtinen, Garry, Rose and Clark, JJ.

                        _____


        Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany
(Thomas J. O'Connor of counsel), for appellant.

        Tabner, Ryan & Keniry, LLP, Albany (Brian M. Quinn of
counsel), for Valerie Sutton, respondent.

        Renee G. Carter, Cambridge, for Scott Burdick and another,
respondents.


                        _____


Garry, J.

        Appeal from an order and judgment of the Supreme Court
(O'Connor, J.), entered October 27, 2014 in Rensselaer County,
which, among other things, granted plaintiff's motion to confirm
a referee's report.

Defendant Raymond Harvey (hereinafter defendant), plaintiff and Wesley Burdick were equal partners in Green Valley Associates (hereinafter the partnership), a partnership formed to buy, sell and develop real estate under an agreement executed in 1984.[1] Defendant's primary role in the partnership was to provide the funding, while plaintiff and Burdick located and sold properties and managed other partnership business. Riva Gold Enterprises, Inc. (hereinafter the corporation), a related corporation, was formed for similar purposes in 1983. Thereafter, the partners, acting for the partnership and the corporation (hereinafter collectively referred to as the entities), purchased, improved, developed and sold various parcels of real property.[2] Financial disagreements arose and, in 1990, defendant commenced involuntary bankruptcy proceedings against the entities that were later discontinued. In 1997, the partners entered into a dissolution agreement, but the agreement was never fully implemented and the entities were not dissolved. In 2000, the partners executed a certificate of authority giving defendant the right to sell or encumber certain partnership assets; he thereafter negotiated a commercial loan and mortgage using partnership property, sold other partnership assets and, after paying back taxes, retained the proceeds.

In 2008, plaintiff commenced this action to dissolve the partnership and a proceeding to dissolve the corporation.[3] Defendant joined issue and asserted a counterclaim for specific performance of the 1997 dissolution agreement. Supreme Court granted plaintiff's motion to dismiss the counterclaim, finding that it was time-barred, and this Court affirmed (75 AD3d 884,

_____

[1] Burdick, who was plaintiff's husband, died in 2008.

[2] The parties apparently accept the finding, made in the course of litigation, that they made no distinction in the course of their transactions between the partnership and the corporation and treated the entities as interchangeable. Accordingly, assets titled to either of the entities will be referred to herein as "partnership" properties.

[3] The matters were subsequently consolidated.

885 [2010], lv dismissed 15 NY3d 874 [2010]). In 2009, the court issued an order of dissolution as to the entities and referred the matter to a referee for, among other things, approval of an accounting of the entities' affairs. Following a hearing, the referee issued a report that was later amended upon defendant's motion. The court rendered a decision and order in August 2014 that, as pertinent here, confirmed the amended report, appointed a receiver to wind up the business of the entities, and directed plaintiff to submit an order delineating the receiver's powers. In October 2014, the court issued an order and judgment that, among other things, established the receiver's powers and duties. Defendant appeals.[4]

"The determination of a [r]eferee appointed to hear and report is entitled to great weight, particularly where conflicting testimony and matters of credibility are at issue, and it will not be disturbed if supported by the evidence in the record" (Rich v Rich, 282 AD2d 952, 954 [2001] [internal quotation marks, brackets, ellipsis and citations omitted]). In challenging the referee's determinations, defendant first contends that he was authorized to transfer two properties to himself in 2009, and that the referee erred in finding that these transfers were void. However, the record supports the referee's conclusion that defendant violated Business Corporation Law § 1114 by conveying the parcels to himself after service of the petition that commenced the proceeding to dissolve the corporation (see Matter of Musano [Sisto Funeral Home, Inc.], 28 AD3d 349, 349 [2006]; Matter of Rappaport, 110 AD2d 639, 641 [1985]). Defendant's argument that the conveyances were authorized by the 1997 dissolution agreement is unavailing, as this Court has already determined that defendant's claim for specific performance of that agreement is time-barred (75 AD3d at 885). Contrary to defendant's argument, the unavailability of a judicial remedy did not entitle him to obtain relief by engaging in self-help.

---

[4] Contrary to plaintiff's argument, defendant properly took a timely appeal from the October 2014 final order and judgment (see CPLR 5501 [a] [1]).

The referee correctly denied defendant's motion to reinstate his counterclaim for specific performance. Defendant's attempt to show that an exception to the statute of limitations is applicable is precluded by the doctrine of the law of the case, as he has already had "a full and fair opportunity to address the issue" of the statute of limitations (Town of Massena v Healthcare Underwriters Mut. Ins. Co., 40 AD3d 1177, 1179 [2007]; accord Briggs v Chapman, 53 AD3d 900, 901 [2008]). Further, as the 1997 agreement had no probative value in resolving issues related to the dissolution of the entities or the distribution of their assets, the referee did not abuse his discretion in refusing to admit it into evidence (see Brooks v Lewin, 48 AD3d 289, 292 [2008], lv dismissed and denied 11 NY3d 826 [2008]).

Next, we reject defendant's contention that the referee should have awarded him interest on his capital contributions to the entities. As the referee found, the agreement by which the partnership was formed makes no reference to the accrual or payment of interest on the partners' capital contributions.[5] Partnership Law § 40 (4) provides that in the absence of an agreement pertaining to interest, "[a] partner shall receive interest on the capital contributed by him [or her] only from the date when repayment should be made." Here, the agreement provided that defendant would be repaid for his capital contributions "as soon as practical" after a sale of property, but not before expenses were deducted and profits or losses then assessed to the partners. However, it is undisputed that no such assessment of expenses, profits and losses from the sale of real estate was ever performed; instead, the testimony revealed that funds from the sale of partnership properties were reinvested into the entities until 2000, when defendant began selling

---

[5] No articles of incorporation, bylaws or other records of the corporation's formation were introduced into evidence, apparently because they had been lost. Accordingly, and based upon the previously discussed finding that the partners treated the two entities as interchangeable, the referee relied upon the partnership agreement as evidence of their intent with regard to both entities.

properties pursuant to the certificate of authority. At that time, he kept the proceeds for himself without notifying the other partners or engaging in the allocation of expenses, profits and losses called for by the agreement. Accordingly, there was no date on which repayment of defendant's capital contributions should have been made, and interest never became payable pursuant to Partnership Law § 40 (4).

The record does not support defendant's contention that interest is due to him under Partnership Law § 40 (3) from the date of payment on capital contributions that he made for purposes other than the purchase of real property. That statute provides that interest is due to a partner on "any payment or advance beyond the amount of capital which [the partner] agreed to contribute" from the date when the payment was made. Here, the record does not establish that defendant's initial agreement to make capital contributions to the partnership was limited to providing funds for the purchase of real property. Although such purchases were clearly among the purposes for which contributions from defendant were anticipated, the partnership agreement does not dictate any specific purpose for capital contributions, nor impose any financial limit on the amount of such contributions. Instead, it broadly provides that all of the partners "shall contribute any capital that they deem necessary to the operation of the business partnership" and may make additional capital contributions "if they see fit." Thus, Partnership Law § 40 (3) is inapplicable.

The referee did not err in finding that funds provided by defendant in 1986 for the purchase of a property and in 1988 for another real estate purchase were loans rather than capital contributions.[6] Both transactions were memorialized in promissory notes that set out terms by which the entities would repay the obligations, including interest rates for both notes

---

[6] The debts underlying the two notes were never paid, and the referee found that they were unenforceable, as defendant took no action to compel repayment until after the statute of limitations expired. Defendant does not challenge that aspect of the referee's determination.

and a repayment date for the 1988 obligation. Defendant testified that the partners considered both transfers to be capital contributions, not loans, and that they executed the notes solely to establish that defendant expected interest to be paid on the underlying obligations.[7] However, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms" (Greenfield v Philles Records, 98 NY2d 562, 569 [2002]; accord Boice v PCK Dev. Co., LLC, 121 AD3d 1246, 1247 [2014]). The plain language of the notes unambiguously identifies both transactions as loans rather than capital contributions. As such, extrinsic evidence is inadmissible to contradict the terms of the documents, and the referee's determination that the transfers were loans is supported by the record (see Matter of Delmar Pediatrics Asthma & Allergy Care, P.C. [Pasternack-Looney], 35 AD3d 987, 988 [2006]).

Next, defendant challenges the referee's allocation of interest attributable to an unsatisfied judgment to defendant alone. In 1995, defendant's brother commenced an action against the entities, plaintiff and Burdick – but not against defendant – to recover funds that the brother had loaned to the entities. The action culminated in a default judgment that was never satisfied, and the brother recorded judgment liens against various properties owned by the entities. Between 2003 and 2007, defendant sold a number of these properties and, although the underlying obligation remained unsatisfied, the brother facilitated each sale by signing releases to remove the judgment liens. As previously noted, defendant kept the proceeds of these sales for himself and neither used the proceeds to satisfy the judgment nor advised plaintiff and Burdick of the sales. Defendant further retained certain funds that he netted from commercial mortgage loans that he placed on partnership property during this period. The referee rejected defendant's claims that these transfers were authorized by the 1997 dissolution agreement

---

[7] Notably, this argument undermines defendant's argument that he also expected to be paid interest on his other contributions to the entities – as to which no notes were executed.

and the 2000 certificate of authority, finding that nothing in either document entitled him to retain the funds and that defendant's conduct constituted self-dealing to the detriment of his partners in breach of his fiduciary duty (see Partnership Law § 43 [1]; Carella v Scholet, 34 AD3d 915, 916-917 [2006]). The referee treated the principal of the unpaid judgment obligation as an expense of the entities to be shared among the partners, but held defendant solely liable for the accrued interest. Contrary to defendant's argument, the referee's determination did not improperly penalize defendant for failing to use his personal funds to satisfy the judgment. Instead, the record supports the referee's determination that partnership funds consisting of the proceeds from the property transfers were available to pay the judgment. Defendant was properly held responsible for the accrued interest, as the referee found that his failure to use those funds to satisfy the judgment caused the delay in satisfying the obligation.

The referee did not err in determining that certain expenses claimed by defendant as reimbursement for his services to the partnership and for miscellaneous expenditures were operating expenses for which defendant expected to be compensated from the entities' profits rather than capital contributions to be reimbursed. With regard to defendant's services, a partner is not ordinarily entitled to compensation for services performed for the partnership beyond his or her share of the profits, unless the partners have agreed otherwise (see Birnbaum v Birnbaum, 73 NY2d 461, 465-466 [1989]; Levy v Leavitt, 257 NY 461, 467-468 [1931]; Posner v Posner, 280 AD2d 318, 319 [2001]). Here, it is undisputed that the partnership agreement made no provision for compensating partners for their services, and defendant did not seek compensation when he performed the services in question. The referee found that certain expenses, including insurance premiums on properties that were titled to the entities but used solely by defendant, had been incurred for defendant's own benefit rather than that of the entities. The referee did not credit defendant's claim that he was owed reimbursement for certain other expenditures, finding that defendant's claims were self-serving and that the lack of accounting, bank and tax records made it impossible to confirm whether materials and equipment that defendant allegedly

furnished to the entities had actually been supplied.  Finally, to the extent that defendant claimed that he was compelled to cover certain operating expenses because of financial difficulties faced by the entities, the record supports the referee's conclusion that these financial difficulties were caused, at least in part, by defendant's self-dealing and wrongful conduct.  Given the absence of any evidence that defendant previously sought repayment or expected to be reimbursed for these expenditures, we find support in the record for the referee's conclusions.

Finally, we agree with defendant that there were errors in the referee's final reconciliation of the entities' assets and the sums to be allocated to the parties.  Partnership Law § 71 sets out rules for the order in which assets are to be applied to partnership liabilities in settling partners' accounts, but also provides that these rules are "subject to any agreement to the contrary."  Here, the partnership agreement expressly provides that capital contributions are to be repaid "after expenses and before profits and losses are assessed to the partners."  As such, the referee erred in calculating a "presumptive share" of the profit to be received by each partner before making deductions for capital contributions.  Further, in determining the total value of the partnership's assets, the referee included the appraised value of the two properties that defendant transferred to himself in 2009.  The inclusion of these properties as partnership assets was appropriate given the referee's determination that the conveyances to defendant were void.  However, the referee also deducted the value of the properties from the amounts due to defendant, thus double-counting them in the final calculations.  Notably, defendant Scott Burdick, the executor of Burdick's estate, acknowledges that the sums were included twice in the referee's calculations and advises this Court that, during the pendency of the appeal, the properties in question were listed with other partnership assets for sale by the receiver pursuant to Supreme Court's order.  He further provides a proposed recalculation that takes the errors into account.  Upon review, we agree that these errors occurred.  Accordingly, we direct that the order and judgment be modified such that the formula set forth in the agreement is applied and the amount of defendant's debt to the entities is

adjusted to remove the value of the two properties transferred in 2009.  We find the sums set forth within Scott Burdick's proposed recalculation to be correctly determined based upon the record, and thus adopt this recalculation and direct that the order and judgment be modified accordingly.

Peters, P.J., Lahtinen, Rose and Clark, JJ., concur.

ORDERED that the order and judgment is modified, on the law, without costs, by deleting the amounts stated therein as the balance due to plaintiff Valerie Sutton, the estate of Wesley Burdick and defendant Raymond Harvey; substitute the amount of $219,114.04 to Sutton, the amount of $219,114.04 to the estate and the amount of $600,979.79 to Harvey; and, as so modified, affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court