Oropallo v Bank of Am. Home Loans, LP (2018 NY Slip Op 04799)





Oropallo v Bank of Am. Home Loans, LP


2018 NY Slip Op 04799


Decided on June 28, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 28, 2018

525003

[*1]ROSE M. OROPALLO et al., Appellants,
v
BANK OF AMERICA HOME LOANS, LP, et al., Respondents.

Calendar Date: May 2, 2018

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Rumsey, JJ.


Lombardi, Walsh, Davenport and Amodeo, PC, Albany (Paul E. Davenport of counsel), for appellants.
The Law Office of David A. Harper, PC, Saratoga Springs (David A. Harper of counsel) and Bryan Cave Leighton Paisner LLP, New York City (Catherine Welker of counsel), for respondents.


Egan Jr., J.P.

MEMORANDUM AND ORDER
Appeal from an order of the Supreme Court (Nolan Jr., J.), entered July 13, 2016 in Saratoga County, which granted defendants' motion to confirm a referee's report.
Between 2005 and 2006, plaintiffs were the victims of a financial fraud perpetrated by Arthur Strasnick, a purported financial and real estate professional, whereby Strasnick, among other things, forged plaintiff Rose M. Oropallo's name on certain mortgage applications and corresponding documentation, unlawfully procuring two mortgages on a property located at 4 Joshua Road in the City of Saratoga Springs, Saratoga County, without Oropallo's knowledge, authorization or consent [FN1]. In March 2011, plaintiffs commenced this action seeking, among other [*2]things, a declaratory judgment that the two fraudulently obtained mortgages held by defendants were void and consequently subject to cancellation and discharge [FN2]. Following joinder of issue, plaintiffs moved for summary judgment on their declaratory judgment cause of action and defendants cross-moved for, among other things, summary judgment on their counterclaim seeking the imposition of an equitable mortgage lien. In April 2013, Supreme Court granted plaintiffs' motion, canceling and voiding the two fraudulent mortgages, and also granted defendants' cross motion, granting defendant Deutsche Bank an equitable mortgage lien against the subject property [FN3]. Supreme Court did not assign a value to the equitable mortgage lien and a referee was subsequently appointed to "hear and determine" the value of same.
In December 2015, the referee issued a report (hereinafter the first report), determining that there was "insufficient and inadequate credible evidence presented" from which the value of the equitable mortgage lien could be determined. Plaintiffs then moved for an order confirming the first report (see 22 NYCRR 202.44). Supreme Court denied plaintiffs' motion and referred the matter back to the referee to once again "hear and report" as to the value of the equitable mortgage lien. In February 2016, the referee issued another report (hereinafter the second report), determining the value of the equitable mortgage lien to be $557,824.25. Defendants then moved to confirm the second report, which motion Supreme Court granted. Plaintiffs now appeal.
Plaintiffs initially contend that Supreme Court erred when it failed to incorporate the first report into a judgment because the referee's role was to "hear and determine" the value of the equitable mortgage lien. We disagree. In granting defendants' cross motion for summary [*3]judgment with respect to the imposition of an equitable mortgage lien, Supreme Court's April 2013 order and judgment specifically provided that, "[u]nless the parties within [60] days of entry of this order are able to stipulate and agree to the amount of such equitable mortgage lien, [it] will appoint a referee to hear and report on that issue" (emphasis added). When 60 days passed without the parties having agreed upon any such stipulation, plaintiffs requested that Supreme Court appoint a referee to "hear proof on the value," and Supreme Court thereafter directed plaintiffs to submit an order to that effect. Plaintiffs then submitted a proposed order of reference for Supreme Court's review; however, the directive contained in Supreme Court's April 2013 order and judgment indicating that the referee was to "hear and report" on the value of the equitable mortgage lien was not transcribed verbatim, instead indicating that the referee was to "to hear and determine the value of the equitable mortgage lien." No objection was rendered with respect to the language included in the order of reference at that time or at any point prior to the subsequent hearing or issuance of the first report. Plaintiffs thereafter moved to confirm the first report and, by order dated February 2015, Supreme Court noted the inconsistency between its April 2013 order and judgment and its August 2013 order of reference, clarifying that the April 2013 order and judgment directing the appointed referee to "hear and report" was controlling.
It is well-settled that a trial court maintains the discretion to cure mistakes, defects and irregularities that do not affect a substantial right of a party (see CPLR 5019 [a]; Kiker v Nassau County, 85 NY2d 879, 881 [1995]), including the discretion to clarify a prior order and judgment to reflect the true intent of the court's original holding (cf. Bennett v Bennett, 99 AD3d 1129, 1129 [2012]; Matter of Glazier v Brightly, 81 AD3d 1197, 1199 [2011]; Reback v Reback, 73 AD3d 890, 890 [2010]; Matter of Owens v Stuart, 292 AD2d 677, 678-679 [2002]; Di Prospero v Ford Motor Co., 105 AD2d 479, 480 [1984]; see also Aridas v Caserta, 41 NY2d 1059, 1061 [1977]). In consideration of Supreme Court's April 2013 order and judgment directing any subsequently appointed referee to "hear and report" as to the value of defendants' equitable mortgage lien (see CPLR 4201, 4311), the inconsistent language that was subsequently incorporated into the August 2013 order of reference and plaintiffs' subsequent motion to confirm — which motion is only required where a referee has been appointed to "hear and report" (see CPLR 4403; 22 NYCRR 202.44) — it was not inappropriate for Supreme Court to clarify in its February 2015 order that its intent was for the appointed referee to "hear and report." Under the circumstances, therefore, neither defendants' failure to object to the reference nor their participation in the subsequent hearing served as a waiver of or consent to the authority of the referee as indicated in the order of reference (compare S. Nicolia & Sons Realty Corp. v A.J.A. Concrete Ready Mix, Inc., 137 AD3d 994, 994 [2016]). Thus, inasmuch as the referee's role was to hear and report, Supreme Court, as "the ultimate arbiter of the dispute," was under no corresponding obligation to incorporate the first report into a judgment (Citimortgage, Inc. v Kidd, 148 AD3d 767, 768 [2017]; see CPLR 4201, 4311, 4403; Shultis v Woodstock Land Dev. Assoc., 195 AD2d 677, 678 [1993]).
We likewise find no error with Supreme Court's determination not to confirm the first report. Indeed, "the report of a [r]eferee should be confirmed if the findings therein are supported by the record" (Matter of Blue Circle v Schermerhorn, 235 AD2d 771, 772 [1997]; see Sutton v Burdick, 135 AD3d 1016, 1018 [2016], lv denied 27 NY3d 913 [2016]; Hales v Ross, 89 AD3d 1261, 1263 [2011]). Here, the referee determined in the first report that "there was insufficient and inadequate credible evidence presented to enable [him] to make any determination regarding the value of the equitable mortgage lien." Given that Supreme Court was under no obligation to accept or confirm the referee's determination (see Citimortgage, Inc. v Kidd, 148 AD3d at 768), [*4]and given the inconclusiveness of the evidence presented and the nature of the fraud that was perpetrated, including the submission of forged documents in support thereof, the Court providently exercised its discretion in not confirming the first report and remitting the matter back to the referee to conduct a second hearing as to the value of defendants' equitable mortgage lien.
Turning to the second report, we find that the referee's determination as to the value of defendants' equitable mortgage lien, and Supreme Court's subsequent confirmation thereof, were adequately supported by admissible documentary evidence in the record (see Sutton v Burdick, 135 AD3d at 1018). In rendering said determination, the referee relied upon, among other things, a payoff statement dated September 6, 2006 that identifies $557,824.25 as the balance due on plaintiffs' legitimate mortgage loan, a certified copy of the mortgage payoff check in the amount of $557,824.25 drawn on the escrow account of Backstreet Title Insurance Agency LLC and made payable to American Brokers Conduit, Deutsche Bank's assignor, dated September 7, 2006, a certified copy of a monthly statement from the escrow account of Backstreet Title Insurance Agency LLC, reflecting a total sum paid of $557,824.25, and a "Milestone" Report from Mortgage Electronic Registration Services, Inc., which provides that the loan was paid in full on September 8, 2006. Contrary to plaintiffs' assertion, the payoff check and the monthly bank statement were properly admitted and relied upon by the referee, as defendants provided plaintiffs timely notice of their intention to submit same as evidence of the value of the equitable mortgage lien by attaching said records, and the requisite certificates of compliance (see CPLR 3122-a), to their supplemental affirmation submitted in opposition to plaintiffs' motion to confirm the first report. Even assuming the other exhibits submitted into evidence were inadmissible, the payoff check and corresponding monthly bank statement, standing alone, provided sufficient admissible proof to support the referee's determination as to the value of defendants' equitable mortgage lien; accordingly, the referee's determination was adequately supported by the record (see Sutton v Burdick, 135 AD3d at 1018; see generally Galasso, Langione & Botter, LLP v Galasso, 89 AD3d 897, 898-899 [2011]; Shen v Shen, 21 AD3d 1078, 1079 [2005]).
Lastly, to the extent that no notice of appeal was filed with respect to Supreme Court's June 2017 amended judgment awarding defendants certain postdecision interest (see CPLR 5002), plaintiffs' contention that Supreme Court improperly awarded same is not properly before us (see CPLR 5513, 5515; Hecht v City of New York, 60 NY2d 57, 60 [1983]; Matter of Gonzalez v Hunter, 137 AD3d 1339, 1341 n [2016], lv dismissed and denied 27 NY3d 1061 [2016]).
Lynch, Clark, Mulvey and Rumsey, JJ., concur.
ORDERED that the order is affirmed, with costs.



Footnotes

Footnote 1:Plaintiffs initially became acquainted with Strasnick in 2005 after Oropallo was awarded compensation after suffering certain lung and heart ailments as a result of her work as a former military nurse and first responder following the September 11, 2001 terrorist attack in New York City. Oropallo thereafter invested $500,000 with Strasnick, who indicated that he would invest these funds in certain fixed assets, generating a rate of return of 12% to 18%. In actuality, Strasnick was engaged in a "Ponzi scheme" and, in addition to the subject mortgage fraud, he also defrauded Oropallo out of her original $500,000 investment. Strasnick was later indicted on various federal charges with respect to, among other things, the multi-layered fraud perpetrated against plaintiffs. He later entered a guilty plea and was sentenced to a prison term of five years to be followed by three years of supervised release and ordered to pay restitution to his victims in the amount of $1,994,620.32.

Footnote 2:The complaint originally named only Bank of America Home Loans LP and Bank of America, NA as defendants, but was later amended, on consent, to add Deutsche Bank National Trust Company as a defendant.

Footnote 3:Although Supreme Court voided the two fraudulent mortgages procured by Strasnick, it also determined that a portion of the mortgage proceeds that Strasnick unlawfully procured from defendants were used to pay off an existing valid mortgage on the subject property that plaintiffs had previously obtained from defendants. Based on this valid mortgage having been satisfied, fairness dictated that Deutsche Bank be granted an equitable mortgage lien against the property.