Cardona, P. J., Crew III, Carpinello and Mugglin, JJ., concur. Ordered that the order is affirmed, with costs.

■ Francis W. Fuchs, Appellant, v Joyce E. Fuchs, Respondent. [714 NYS2d 381] —Graffeo, J. Appeal from an amended judgment of the Supreme Court (Benson, J.H.O.) ordering, inter alia, equitable distribution of the parties' marital property, entered March 24, 1999 in Columbia County, upon a decision of the court.

After the commencement of their matrimonial trial and the retention of new counsel by plaintiff, the parties, who were married for 30 years and have four children, entered into a stipulation in court resolving some of the issues in this action, including that plaintiff would be granted a judgment of divorce on the ground of defendant's abandonment. In addition, they agreed to joint custody of their two minor children, with plaintiff retaining primary physical custody and defendant paying child support in accordance with the Child Support Standards Act. The unresolved issues pertaining to equitable distribution of the parties' assets and liabilities and defendant's request for maintenance were then tried and determined by Supreme Court. Having initially executed a judgment on October 5, 1998, the court issued an amended and resettled judgment on November 18, 1998 from which plaintiff now appeals.

With respect to the distribution of marital property, the parties' major asset was the marital residence, a home built by

plaintiff situated on 21.75 acres. Plaintiff was granted title to the real property but he contends on appeal that Supreme Court abused its discretion in accepting a January 1993 appraisal of $130,000 as the value of the realty for distributive purposes because the matrimonial action was not commenced until May 1996. Generally, the value of marital property is established as of the date of commencement of the matrimonial action, but a trial court has discretion to determine the appropriate valuation date, particularly if use of the date of commencement would result in an inequitable distribution (*see,* Domestic Relations Law § 236 [B] [4] [b]; *Sagarin v Sagarin,* 251 AD2d 396; *Basile v Basile,* 199 AD2d 649, 651). In this case, rather than using the date the action was commenced, Supreme Court adopted a valuation date of July 1994, the month that defendant moved from the marital residence, based on its determination that a wasteful dissipation of marital assets had occurred due to plaintiff's failure to repair and maintain the premises after defendant's departure.

There is no indication in the record that either party sought pretrial to establish the means of obtaining an appraisal or the proper valuation date. As a result, Supreme Court was presented at trial with three considerably dissimilar appraisals of the marital residence: a January 1993 appraisal of $130,000, an October 1996 appraisal of $55,000 and a May 1998 appraisal of $87,500. Supreme Court, the trier of fact, is to be accorded deference in the manner in which it weighed the conflicting expert testimony presented in this matter (*see, Sagarin v Sagarin, supra,* at 396; *Walasek v Walasek,* 243 AD2d 851, 852; *Garvey v Garvey,* 223 AD2d 968, 972) and, upon our review of the record, we find adequate support for the court's decision to rely on the earliest of the appraisals (*see, Southwick v Southwick,* 202 AD2d 996, 997, *lv dismissed* 83 NY2d 1000; *Baker v Baker,* 199 AD2d 967, 968; *cf., Staropoli v Staropoli,* 180 AD2d 727). Notably, the assessed value of the property while the parties lived together was $92,500 and the parties borrowed $75,000 against their home equity line of credit. Evidence was further presented that plaintiff allowed the premises to fall into disrepair, neglected to complete repairs to several rooms after water damage was sustained, failed to fix cracks and holes in the walls and ceiling, and allowed discarded vehicles and other debris to accumulate on the property, all of which contributed to considerable diminution in value as noted in the testimony of the appraisers. We therefore decline to interfere with the court's valuation designation for the marital residence, particularly since the January 1993 appraisal, which relied on four comparable sales in relative proximity to the

property, was conducted prior to most of the water damage and other deterioration.

Plaintiff further asserts that the distributive award of $17,485 to defendant was an inequitable division of the parties' equity in the marital residence and an unfair allocation of debt repayment responsibility. While the parties lived together, they incurred a debt of $22,864 against their home equity line of credit. Despite the parties' apparently frugal lifestyle, after they separated in 1994 each drew substantial sums against the account until the $75,000 credit line' was exhausted. Plaintiff, who had physical custody of the children, borrowed $27,485 after defendant's departure, which he claims was expended to meet family expenses such as mortgage payments, dental and orthodontic bills, home improvement expenditures, tax payments, joint credit card debt and the rental obligations of the two emancipated children. In 1998, defendant borrowed $24,650 against the credit line, alleging that she used a portion of the loan proceeds to pay back rent, her attorney's retainer, $3,800 in credit card debt and $1,000 toward a telephone bill, with $13,000 remaining unspent at the time of trial.

Having established the value of the marital residence at $130,000, Supreme Court then deducted the $75,000 due on the home equity mortgage loan, leaving the parties' equity in the realty at $55,000 for equitable distribution purposes. Finding defendant responsible for one half of the original $22,864 home equity debt, the court subtracted $11,432 from her $27,500 equity share, thereby reducing defendant's distributive share to $16,068. This figure was further adjusted to account for the difference in the amounts borrowed by each party, that is, "a sum equal to one half of the difference in the sums each borrowed against the home equity line of credit ($27,485 minus $24,650 divided by two or $1,417)", which resulted in a $17,485 distributive award for defendant.

Plaintiff contests Supreme Court's calculations and argues that defendant should be held solely responsible for repayment of the $24,650 she borrowed and that he should be given credit for $2,600 he paid in connection with defendant's credit card debt. Based on the testimony and evidence adduced at trial, we find no basis to disturb the distributive award fashioned by Supreme Court. Both parties drew nearly like amounts against the line of credit after their separation and the court reduced defendant's equity by the amount of debt she incurred. Furthermore, in light of the lack of evidence substantiating plaintiff's alleged expenditures or justifying his decision to give

a portion of the loan proceeds to the emancipated children, we find that plaintiff failed to sufficiently establish that he was entitled to the offsets or credits he claimed (*see, Soule v Soule*, 252 AD2d 768, 770-771; *Hapeman v Hapeman*, 229 AD2d 807, 812).

Similarly, plaintiff's assertion that Supreme Court erred in failing to distribute defendant's pension benefits is also unpersuasive. The court addressed the equitable distribution of the parties' pensions by ordering that each party would be entitled to receive his or her respective marital share of the other spouse's pension and the parties were directed to submit qualified domestic relations orders to the court. Finding no error or abuse of discretion by the court, we see no reason to modify the direction of Supreme Court on this issue.

We next address the award of permanent spousal maintenance in the amount of $125 a week granted defendant. Defendant left her job when the parties married in 1968 and she was not employed outside the home for a period of 17 years. In 1986, she began working as a school bus driver and, at the time of trial, she was 46 years of age and held a class A commercial driver's license. As a result of additional part-time employment, defendant's 1997 tax records reflected an income of $22,680. Plaintiff's earnings also increased over the course of the marriage. When the parties were first married, plaintiff worked as a farmer and had an annual income below $10,000. He later engaged in carpentry work and eventually acquired part-time employment in 1976 as a Town Assessor. At the time of trial, plaintiff was 52 years old with a total income of $41,400 derived from his salary as the Assessor for two towns.

It is well settled that determination of whether one of the parties in a matrimonial action is entitled to maintenance and, if so, the amount to be awarded falls within the broad discretionary powers of Supreme Court (*see*, Domestic Relations Law § 236 [B] [6] [a]; *Cohen v Cohen*, 154 AD2d 808, 809; *Donnelly v Donnelly*, 144 AD2d 797, 798, *appeal dismissed* 73 NY2d 992). In this case, we find the record reveals that an award of maintenance was appropriate and the amount plaintiff was directed to pay on a weekly basis was justified by the statutory factors articulated by Supreme Court, such as the income disparity between the parties, the long duration of the marriage, the parties' predivorce marital standard of living and the limitations on defendant's earning capacity in light of her lack of higher education (*see*, Domestic Relations Law § 236 [B] [6]).

Although plaintiff contests the "lifetime" duration of the

award in his brief on appeal, plaintiff's attorney acknowledged at oral argument that plaintiff is no longer paying maintenance to his former spouse and defendant confirmed that she has remarried. In light of the parties' present circumstances, plaintiff's challenge to the duration of the maintenance award is moot (*see,* Domestic Relations Law § 236 [B] [6] [c]) and, accordingly, we decline to review the propriety of the grant of permanent maintenance.

Finally, plaintiff submits that the amended and resettled judgment incorrectly calculates defendant's monthly child support obligation at $267, which he asserts should be increased to $420.18. Pursuant to the Child Support Standards Act, child support calculations are based on the parents' gross incomes as reported in their most recent Federal income tax returns (*see,* Domestic Relations Law § 240 [1-b] [b] [5]; *Hapeman v Hapeman, supra,* at 808-809), with statutory deductions for FICA taxes and maintenance actually paid (*see,* Domestic Relations Law § 240 [1-b] [b] [5] [vii] [C], [H]; *Hapeman v Hapeman, supra,* at 809). In addition to an apparent mathematical error, defendant's gross income as evidenced in her 1997 income tax return does not reconcile with the income attributed to her by Supreme Court, and no income tax records or W-2 statements pertaining to plaintiff's earnings are contained in the record. For these reasons, the calculation of child support is remitted for further proceedings consistent with the statutory requirements (*see,* Domestic Relations Law § 240 [1-b]; *McNally v McNally,* 251 AD2d 302, 303-304). Defendant shall continue to pay child support in the amount of $267 per month as ordered until such review is completed by Supreme Court.

Cardona, P. J., Carpinello, Mugglin and Lahtinen, JJ., concur. Ordered that the amended judgment is modified, on the law, without costs, by remitting the matter to the Supreme Court for the purpose of recalculating the parties' child support obligations, and, as so modified, affirmed.