Carter v Fairchild-Carter (2020 NY Slip Op 05990)





Carter v Fairchild-Carter


2020 NY Slip Op 05990


Decided on October 22, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 22, 2020

529242 530124

[*1]James D. Carter, Appellant,
v
Tina L. Fairchild-Carter, Respondent.

Calendar Date: September 9, 2020

Before: Egan Jr., J.P., Mulvey, Devine, Aarons and Colangelo, JJ.


Assaf & Siegal PLLC, Albany (Michael D. Assaf of counsel), for appellant.
Law Offices of MaryAnne Bukolt-Ryder, PLLC, Plattsburgh (MaryAnne Bukolt-Ryder of counsel), for respondent.



Egan Jr., J.P.
Appeals (1) from an order of the Supreme Court (Champagne, J.), entered April 15, 2019 in Clinton County, which, after a bifurcated trial, set aside the parties' prenuptial agreement, and (2) from an order of said court, entered September 13, 2019 in Clinton County, which, among other things, granted defendant's cross motion to conform the pleadings to the proof.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married on August 30, 2008. On the day before the wedding, the parties executed a prenuptial agreement wherein the wife, among other things, waived her right to maintenance and limited her right to equitable distribution of the marital assets. Following the marriage, the parties' relationship deteriorated and, in 2014, the husband commenced this action seeking a judgment of separation pursuant to Domestic Relations Law § 200. The wife answered and counterclaimed for a judgment of divorce and sought certain ancillary relief, including maintenance and equitable distribution. The husband moved for summary judgment, requesting that Supreme Court grant the wife's counterclaim for divorce and enforce the terms of the parties' prenuptial agreement. In opposition, the wife sought to invalidate the parties' prenuptial agreement on the basis of, among other things, fraud, duress, coercion, misrepresentation and overreaching. Supreme Court denied the husband's summary judgment motion and, on appeal, this Court affirmed, determining that there was a material question of fact regarding whether the prenuptial agreement was the product of fraud and/or overreaching (159 AD3d 1315, 1315 [2018]).
A two-day bifurcated bench trial thereafter ensued, limited solely to determining the validity of the prenuptial agreement. Following the trial, Supreme Court set aside the agreement, determining that the husband "purposefully, knowingly[] and fraudulently" induced the wife into signing the agreement through false promises and overreached by intentionally misrepresenting the fair market value of the marital residence so as to preclude the wife from receiving any financial benefit upon divorce. The husband moved to reargue, asserting that the wife's counterclaim for fraud was not pleaded with sufficient particularity, to which the wife cross-moved to conform the pleadings to the proof adduced at the trial. Supreme Court denied the husband's motion and granted the wife's cross motion. The husband appeals.
We affirm. As relevant here, "[d]uly executed prenuptial agreements are generally valid and enforceable given the strong public policy favoring individuals ordering and deciding their own interests through contractual arrangements" (Herr v Herr, 97 AD3d 961, 962 [2012] [internal quotation marks, brackets and citations omitted], lv dismissed 20 NY3d 904 [2012]; see Van Kipnis v Van Kipnis, 11 NY3d 573, 577 [2008]; Bloomfield v Bloomfield, 97 NY2d 188, 193 [2001]). A prenuptial agreement between spouses should be closely scrutinized, and it is the burden of the party seeking to invalidate it to establish that the agreement is unconscionable, the product of fraud or manifestly unfair to one spouse due to overreaching on the part of the other spouse (see Christian v Christian, 42 NY2d 63, 72 [1977]; Taha v Elzemity, 157 AD3d 744, 745-746 [2018], lv dismissed 33 NY3d 1000 [2019]; Darrin v Darrin, 40 AD3d 1391, 1392-1393 [2007], lv dismissed 9 NY3d 914 [2007]). To establish fraud, there must be evidence adduced "demonstrating concealment of facts, misrepresentation or some form of deception" (Pulver v Pulver, 40 AD3d 1315, 1317 [2007] [internal quotation marks and citation omitted]). Importantly, great deference is accorded to the trial court's determination on issues of witness credibility (see Ruparelia v Ruparelia, 136 AD3d 1266, 1268 [2016]).
Here, the evidence introduced at trial established that the wife and the husband were in a relationship for approximately 10 years prior to their August 30, 2008 marriage. In early August 2008, the husband, who is approximately 20 years older than the wife, presented her with a prenuptial agreement in anticipation of their wedding date. The wife testified that, on August 12, 2008, she consulted with an attorney, who advised her not to sign the agreement, and recommended that it be modified to (1) remove Article II (A), which limited her ability to receive certain appreciation of the marital residence, and (2) remove Article II (C), which limited the wife to receiving $15,000 per year for every full year the parties were married as long as the husband commenced the divorce action, and to instead include a provision providing for a lump-sum payment from the husband's estate should the parties subsequently divorce.[FN1] She thereafter raised these proposed modifications with the husband, who indicated that her concerns would be addressed. When a revised prenuptial agreement was not subsequently forthcoming, the wife consulted with her attorney a second time on August 27, 2008. At this meeting, the wife's attorney and the husband's attorney spoke on the telephone, in the wife's presence, regarding the proposed modifications. The following day, the law firm of the wife's attorney received a facsimile from the husband's attorney indicating that the agreement had been modified to remove Article II (A)'s appreciation clause and that a lump-sum payment provision had been included in Article II (C), as the wife had requested.[FN2] The following afternoon, less than 24 hours before the parties' wedding, the husband and the wife met at the Clinton County courthouse to execute the agreement, whereupon the husband handed her an agreement and represented that the requested revisions had been made. The wife thereafter signed the agreement without reading it or consulting with her attorney.
Contrastingly, the husband testified that Article II (A) and Article II (C) had not been included in the initial draft of the prenuptial agreement and had only been added, at his behest, after the wife voiced her concerns over the agreement. He further averred that he was never made aware of the wife's request to include a provision providing for a lump-sum payment in the event of divorce and believed that the document that he had presented to the wife at the courthouse constituted the parties' mutually agreed upon revised agreement.
With respect to the valuation of the marital residence, the wife introduced the testimony of the assessor for the Town of Chazy, Clinton County, who indicated that the assessed value of the marital residence in 2008 was $515,800. The wife also produced the testimony of the certified general real estate appraiser who appraised the marital residence on behalf of the husband in 2015 and determined that the fair market value of the residence as of 2014 was $590,000. The husband, on the other hand, proffered the testimony of a real estate broker who estimated that the fair market value of the home in 2008 was between $750,000 and $1 million.
To the extent that the testimony of the husband and the wife differed with regard to the circumstances underlying the execution of the agreement, it was within Supreme Court's discretion to credit the testimony of the wife over that of the husband, and we defer to its findings in this regard (see Petracca v Petracca, 101 AD3d 695, 699 [2012]; Diaco v Diaco, 278 AD2d 358, 359 [2000]). Further, given the disparity of the parties' wealth and the fact that the agreement was unilaterally drafted by the husband's counsel and executed less than 24 hours prior to the parties' wedding, we find that Supreme Court's determination that the husband made a deliberate effort to conceal the unrevised nature of the agreement, effectively negating any intent of the parties to mutually agree on the terms thereof, is sufficiently supported by the record (see Siclari v Siclari, 291 AD2d 392, 393 [2002]).
Supreme Court also appropriately discounted the testimony of the husband's real estate broker regarding the valuation of the marital residence. Notably, the broker did not conduct an appraisal of the residence for 2008 or research relevant comparable sales and relied solely upon a tax map that was not determinative of the boundaries of the property, and he had previously attended two social events at the husband's residence (see Bricker v Bricker, 69 AD3d 546, 547-548 [2010]; Atkinson v Atkinson, 289 AD2d 907, 910 [2001]; Fuchs v Fuchs, 276 AD2d 868, 869 [2000]). Moreover, the husband did not proffer any evidence to substantiate his self-serving claim that he had received a $775,000 offer to purchase the home by an unidentified third party. The record, therefore, fails to demonstrate that there was ever a meeting of the minds between the parties with respect to the fair market value of the residence (see Fulginiti v Fulginiti, 127 AD3d 1382, 1385 [2015]; Alton v Alton, 83 AD3d 972, 974 [2011]; compare Colello v Colello, 9 AD3d 855, 859 [2004], lv denied 11 AD3d 1053 [2004]). Accordingly, having reviewed the totality of the evidence at trial, we find that Supreme Court's determinations that the husband knowingly, purposefully and fraudulently induced the wife to sign the agreement and intentionally misrepresented the fair market value of the marital residence are amply supported by the record and, therefore, the prenuptial agreement was appropriately set aside as the product of fraud and/or overreaching (see Cioffi-Petrakis v Petrakis, 103 AD3d 766, 767-768 [2013], lv denied 21 NY3d 860 [2013]).
We reject the husband's contention that Supreme Court erred when it set aside the entirety of the prenuptial agreement despite the existence of a severability clause. "'Whether a contract is entire or severable generally is a question of intention, to be determined by the language employed by the parties, viewed in the light of the circumstances surrounding them at the time they contracted'" (F & K Supply v Willowbrook Dev. Co., 288 AD2d 713, 716 [2001], quoting Christian v Christian, 42 NY2d at 73 [citations omitted]). Here, given that the wife's assent to the prenuptial agreement was fraudulently induced, we find that the entire agreement was permeated by fraud from the outset such that the agreement was rendered invalid in its entirety (cf. Matter of Weinrott [Carp], 32 NY2d 190, 197 [1973]; compare Markowits v Friedman, 144 AD3d 993, 997 [2016]).
Lastly, Supreme Court properly granted the wife's cross motion to conform her pleadings to the proof adduced at trial. Such a motion "may be made at any time and should be liberally granted unless doing so results in prejudice to the nonmoving party" (Noble v Slavin, 150 AD3d 1345, 1346 [2017] [internal quotation marks and citations omitted]; see CPLR 3025 [c]; Kimso Apts., LLC v Gandhi, 24 NY3d 403, 411 [2014]; Lakshmi Grocery & Gas, Inc. v GRJH, Inc., 138 AD3d 1290, 1291 [2016]). Here, the husband cannot credibly claim surprise by the subject fraud allegations, as the wife's pleadings provided adequate notice and set forth a cognizable cause of action for fraud (see Foley D'Agostino, 21 AD2d 60, 65 [1964]). Nor has the husband demonstrated any prejudice. The relevant motion papers and corresponding affidavits that have been filed over the course of the approximately four years that this matter has been pending plainly challenged the circumstances underlying the execution of the agreement and the contents thereof and, at trial, the husband acquiesced to the admission of evidence regarding the wife's allegations of fraud and was able to cross-examine witnesses with regard to same (see Lakshmi Grocery & Gas, Inc. v GRJH, Inc., 138 AD3d at 1292; Cotazino v Basil Dev. Corp., 167 AD2d 632, 634 [1990]; O'Sullivan v O'Sullivan, 126 AD2d 784, 785-786 [1987], lv dismissed 69 NY2d 984 [1987]). Accordingly, Supreme Court appropriately granted the wife's cross motion to conform the pleadings. The husband's remaining contentions, to the extent not specifically addressed, have been reviewed and found to be without merit.
Mulvey, Devine, Aarons and Colangelo, JJ., concur.
ORDERED that the orders are affirmed, without costs.



Footnotes

Footnote 1: Article II (A) of the prenuptial agreement limited the wife's entitlement to appreciation in the marital residence to 50% of any amount by which the residence "exceed[ed] its mutually agreed upon current fair market value of [$800,000]." Article II (C) of the agreement provided that, if and only if the husband commenced an action for divorce, the wife would be entitled to payment of $15,000 for each full year the parties were married. If the wife commenced an action for divorce, however, she was entitled to no such payment.

Footnote 2: The facsimile also appears to have included a copy of the proposed amended prenuptial agreement; however, a copy of this version of the agreement was not included in the record. Notably, following receipt of this facsimile, the wife's law firm did not have any additional contact with her regarding the prenuptial agreement prior to her signing the version of the agreement that was presented to her by the husband the following afternoon.